WIGGENHORN et al. v. DANIELS et al., Appellants.

### Division One, March 30, 1899.

1. **Ejectment:** PURCHASER'S NOTICE: ADVERSE POSSESSION. He who buys property in the open and adverse possession of a third person is chargeable with notice of that person's title and right in the premises.

2. ———: ———: ———: DELIVERY: FORGED DEEDS. Plaintiffs signed and acknowledged a deed, and the notary took it to his office to attach his seal, but never returned it, but put it of record. The grantors objected to surrendering the deed until the consideration was paid. The purchaser went to the bank for the money, and returned claiming the bank was closed, and requested the grantors to return next day and get their money. The next day they returned, but the purchaser had disappeared and was not seen afterwards. The grantee was not named in the deed at the time of its execution, but the name of one of the defendants was written therein before it was recorded, but without his consent or knowledge, and the deed was never delivered to him, and he does not appeal. There was a number of forged deeds through which the title at last purported to be lodged in the other defendants. The property remained in the open possession of plaintiffs' tenants until the last deed was made, and after that the rent was paid to the grantee of that deed. *Held,* that plaintiffs were entitled to recover; *and* although they put it in the power of the first grantee to deceive subsequent purchasers, yet as he in fact made no deed and the instruments purporting to be his deeds are forgeries, the grantees therein named were not purchasers, and as none of them were deceived by him, they can not complain.

*Appeal from St. Louis City Circuit Court.*—HON. THOMAS A. RUSSELL, Judge.

AFFIRMED.

ROBERT L. McLARAN, T. PERCY CARR and JARED W. YOUNG for appellants.

(1) The insertion of the name of William H. Daniels as grantee in the deed was authorized by the Wiggenhorns. The filling in of the blank in the deed for the grantee's name

was legal and proper, even though the deed itself had been delivered in blank. Field v. Stagg, 52 Mo. 534; Burnside v. Wyman, 49 Mo. 356; Drury v. Foster, 2 Wall. 24; Otis v. Browning, 59 Mo. App. 326; Hammerslough v. Cheatham, 84 Mo. 13; Swartz v. Ballou, 47 Ia. 188; 13 Western Jurist, 289. (2) Plaintiffs are estopped by their gross laches and negligence from setting up any claim to this property in the hands of *bona fide* purchasers for value and without notice of plaintiffs' rights therein. Cowgill v. Petifish, 51 Mo. App. 264; Ford v. Loomis, 33 Mich. 121; Cummings v. Hurd, 49 Mo. App. 139; Crippen. v. Bank, 51 Mo. App. 264.

ALFRED A. PAXSON for respondents.

(1) The presumption is that identity of name *prima facie* establishes identity of person, and casts upon the adverse party the burden of proving the contrary. Hoyt v. Davis, 21 Mo. App. 239; Phillips v. Evans, 64 Mo. 23; State v. Moore, 61 Mo. 279; State v. McGuire, 87 Mo. 642. (2) There is no estoppel pleaded by any of the defendants. The nearest approach to such. a plea is the joint answer of Obert and McKay but even their answer falls short of the rule as laid down in the case of Blodgett v. Perry, 97 Mo. 272. Besides plaintiff was a married woman. Rannells v. Gerner, 80 Mo. 483. (3) Where one purchases property in the possession of one not the vendor, the purchaser is bound' to make inquiry concerning the rights of the one in possession, and failing to do so, is chargeable with notice of all that a proper inquiry would have disclosed. Pike v. Martindale, 91 Mo. 268; Barksdale v. Brooks, 70 Mo. 197; Martin v. Jones, 72 Mo. 23; Blackburn v. Tweedie, 60 Mo. 505; White v. White, 89 Ill. 460; Ford v. Marcall, 107 Ill. 136; Bartlett v. Glasscock, 4 Mo. 62; Major v. Bukley, 51 Mo. 227; Leavitt v. La Force, 71 Mo. 356; Roan v. Winn, 93 Mo. 510; Ins. Co. v. Smith, 117 Mo. 292; Meier v. Blume, 80 Mo. 179;

Bispham's Prin. of Eq. (3 Ed.), sec. 268. (4) And to support the plea of a *bona fide* purchaser without notice, the defendant must aver and prove not only that he had no notice of the plaintiffs' rights before his purchase, but that the consideration was a valuable one and had been actually paid in full before notice. Aubuchon v. Bender, 44 Mo. 560; Bishop v. Schneider, 46 Mo. 472; Arnholt v. Hartwig, 73 Mo. 485; Young v. Kellar, 94 Mo. 590.

VALLIANT, J.—This is a suit in equity to set aside certain instruments purporting to be deeds affecting the title to real estate in the city of St. Louis alleged to belong to plaintiff Emma Wiggenhorn, and praying appropriate relief in the situation. There was a full decree for the plaintiffs on all the points in issue, and all of the defendants, except Daniels, have appealed. The pleadings were all in proper form, and the questions in the case depend on the facts as developed in the evidence.

We find the facts to be as follows:

Mrs. Wiggenhorn was the owner of the real estate in question; through her husband and co-plaintiff she negotiated for a sale of it to one E. L. Squire at the agreed price of $2,000; on the thirty-first of January, 1895, she and her husband pursuant to appointment went to the office of Squire to close the sale; Squire had already a warranty deed prepared for signature, dated January 30, 1895, which he presented to the Wiggenhorns to be signed; they noticed that the space for the name of the grantee was left blank and called Squire's attention to it; he told them he would fill in the name after the deed was signed; they signed it and he took it and went out of the office to find a notary, and soon returned with one, who asked them if the signatures were theirs and if the instrument was their act and deed, to which they assented, and the notary then took the deed and went out with it for the purpose, as was understood, of taking it to his

office to write up the acknowledgment and place his seal to it. Shortly after the notary left, Squire left saying that he was going to the bank to get the money, the $2,000 to pay the Wiggenhorns for the property; he returned in a little while and said the bank was closed and he could not get the money until next morning. They then asked him for the deed. He said the notary had it, that they should come back in the morning and get the money. Mrs. Wiggenhorn went away and left her husband there to settle the business. In a little while Squire went out again and when he returned he said that the notary had taken the deed to the recorder's office. Wiggenhorn then left and that is the last he ever saw of Squire. He went next morning to Squire's office and again in the afternoon, and from day to day for two weeks, but Squire was absent. Squire, after the transactions hereinafter mentioned, absconded and has never been seen in St. Louis since. The deed was filed for record January 31, 1895, with the name of William H. Daniels written in the blank that had been left when signed for the grantee's name. Daniels' name was written in the deed without his knowledge or consent, and it was never delivered to him; he was an entire stranger to the transaction, and had no relation with Squire that would justify him in the use of his name.

On February 7, 1895, a paper purporting to be a deed of trust from William H. Daniels to John C. Obert, trustee for Read H. McKay, conveying this property to the trustee to secure a principal note for $600 and four interest notes for $18 each, was filed in the office of the recorder of deeds in the city of St. Louis and recorded in Book 1254, page 353. On the faith of that deed of trust and notes, Squire got $600 from defendant Obert. That deed and those notes were forgeries.

On February 14, 1895, a paper purporting to be a deed, of date January 31, 1895, from William H. Daniels convey-

ing this property to the City and Suburban Investment Company, a corporation, was filed in the recorder's office and recorded in Book 1261, page 124. Squire was the president and his wife the secretary of that corporation. That deed was a forgery.

On February 19, 1895, the City and Suburban Investment Company executed a deed purporting to convey to the McLaran Real Estate and Investment Company the property in question; the deed was acknowledged and filed for record on February 21, 1895, and recorded in Book 1267, page 115.

At the date of the above named forged instruments, and of the deed to the McLaran Real Estate and Investment Company, the property was still in the possession of the plaintiffs by their tenants in open and visible occupation of the houses, yet neither of the parties named as grantees in those papers or deed made any inquiry as to who was the landlord. After the McLaran Real Estate and Investment Company took the deed, it assumed authority to collect the rents, and the tenants, who were negroes, paid the rents to that corporation, which in that way has been in possession of the property ever since. The value of the monthly rental is $12.

Under the foregoing facts there can be but one conclusion; and as to the facts, the evidence leaves no room to doubt. There was some suggestion of a question as to the identity of Daniels, but the plaintiffs' proof is so clear and convincing that it leaves no doubt on that point.

The plaintiffs were guilty of carelessness in intrusting their deed out of their possession before the money was paid them, and in leaving it to Squire to fill up the blank; and if the grantee, whose name was inserted in the deed after it passed out of their sight, had executed the two instruments purporting to be his deeds, the defendants would be placed in very much better position. But even then it is not clear that they could claim to be innocent purchasers without notice.

He who buys a piece of property in the open and visible possession of a third person is chargeable with notice of the title and right of that person in the premises. [Leavitt v. La Force, 71 Mo. 353; Davis v. Briscoe, 81 Mo. 27; Ins. Co. v. Smith, 117 Mo. 261.]

But these defendants are not purchasers at all. The paper upon which their claim of title is predicated is a forgery. The title, if any, that passed by the deed from plaintiffs to Daniels, has never gone any further.

The utmost that defendants can urge against the plaintiffs is that they put it in the power of Mr. Daniels to deceive them. But Mr. Daniels has not deceived them; they have been deceived by some one who falsely impersonated Mr. Daniels. They are chargeable with the duty to themselves of knowing who they were dealing with. The plaintiffs are in no way responsible for the acts of the person who forged those deeds.

The judgment of the circuit court is affirmed. ROBINSON, J., concurs; BRACE, P. J., and MARSHALL, J., concur in result.